UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JERRY RIVERA,

          Plaintiff,

          v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

          Defendant.

No. 1:15-CV-03019-JTR

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 15, 18. Attorney D. James Tree represents Jerry Rivera (Plaintiff); Special Assistant United States Attorney Christopher J. Brackett represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on November 17, 2011, alleging disability since October 31, 1981. Tr. 205-11. The

application was denied initially and upon reconsideration.  Tr. 83-96, 97-110.
Administrative Law Judge (ALJ) Larry Kennedy held a hearing on October 28,
2013, at which Plaintiff, represented by counsel, testified as did vocational expert
(VE) Kimberly Mullinax.  Tr. 27-72.  The ALJ issued an unfavorable decision on
November 6, 2013.  Tr. 8-26.  The Appeals Council denied review.  Tr. 1-4.  The
ALJ's November 2013 decision became the final decision of the Commissioner,
which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff
filed this action for judicial review on January 30, 2015.  ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the
ALJ's decision, and the briefs of the parties.  They are only briefly summarized
here.

Plaintiff was 31 years old at the time of the hearing.  Tr. 35.  Plaintiff
attended school through eighth grade and has not obtained a GED.  Tr. 35.
Plaintiff can read, do simple math, and writes at a third or fourth grade level.  Tr.
35-36.  Plaintiff last worked at a gun club for three months starting April 1, 2013.
Tr. 38.  At this job, Plaintiff built targets, painted and repaired PVC pipes, worked
on an irrigation/sprinkler system, did some carpentry, maintained equipment,
loaded skeets, picked up spent shotgun shells, and collected live ammunition.  Tr.
39, 60.  Plaintiff worked by himself under a supervisor who gave him a list of
things to do.  Tr. 39.  Plaintiff estimated that he might have worked as much as
thirty two hours a week.  Tr. 40.  Before working at the gun club, Plaintiff did
maintenance work at a farm and a ranch.  Tr. 41-42.  None of these jobs involved
very much interaction with other employees or supervisors.  Tr. 44-45.

Plaintiff testified that he is unable to work because of problems interacting
with other people.  Tr. 44.  Plaintiff claimed that when he is around other people,
he becomes nervous, violent, and upset.  Tr. 44. Plaintiff testified that he has pain
and numbness in his hands and wrists, which affects his grip.  Tr. 50.  Plaintiff's

left knee sometimes "pops out of place" or "gives out," which requires Plaintiff to wear a knee brace and sometimes an immobilization brace. Tr. 51.

On a typically day, Plaintiff does small things around the house and "stare[s] at the walls a lot." Tr. 42. Plaintiff has about three friends that he occasionally spends time with. Tr. 43. Plaintiff tries to avoid other people and spends most of his time at home. Tr. 47-48. Plaintiff spends more than half the day lying down. Tr. 52.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

///

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

1

**SEQUENTIAL EVALUATION PROCESS**

2      The Commissioner has established a five-step sequential evaluation process

3  for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a),

4  416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one

5  through four, the burden of proof rests upon claimants to establish a prima facie

6  case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This

7  burden is met once claimants establish that physical or mental impairments prevent

8  them from engaging in their previous occupations.  20 C.F.R. § 416.920(a)(4).  If

9  claimants cannot do their past relevant work, the ALJ proceeds to step five, and the

10 burden shifts to the Commissioner to show that (1) the claimants can make an

11 adjustment to other work, and (2) specific jobs exist in the national economy which

12 claimants can perform.  *Batson v. Comm'r of Soc.  Sec. Admin.*, 359 F.3d 1190,

13 1193-1194 (2004).  If claimants cannot make an adjustment to other work in the

14 national economy, a finding of "disabled" is made.  20 C.F.R. § 416.920(a)(4)(i-v).

15

**ADMINISTRATIVE DECISION**

16      On November 6, 2013, the ALJ issued a decision finding Plaintiff was not

17 disabled as defined in the Social Security Act.

18      At step one, the ALJ found Plaintiff had not engaged in substantial gainful

19 activity since November 17, 2011, the application date.  Tr. 13.

20      At step two, the ALJ determined Plaintiff had the following severe

21 impairments:  left knee degenerative joint disease; attention deficit/hyperactivity

22 disorder (ADHD); posttraumatic stress disorder (PTSD); anxiety disorder not

23 otherwise specified (NOS); personality disorder versus borderline antisocial and

24 schizoid personality traits; alcohol dependence in substantial remission; and,

25 cannabis dependence in partial remission.  Tr. 13.

26      At step three, the ALJ found Plaintiff did not have an impairment or

27 combination of impairments that met or medically equaled the severity of one of

28 the listed impairments.  Tr. 14.

At step four, the ALJ assessed Plaintiff's residual function capacity (RFC) and determined he could perform light work with the following limitations:

> [Plaintiff] can lift up to twenty pounds occasionally and lift and/or carry up to ten pounds frequently, stand and/or walk about two hours in an eight-hour day with normal breaks, and sit for about six hours in an eight-hour day with normal breaks. [Plaintiff] cannot perform prolonged walking or standing, and cannot use foot controls. He can occasionally balance, stoop, and crouch, and cannot climb ramps, stairs, ladders, ropes, or scaffolds. He can frequently finger, and reach bilaterally, must avoid concentrated exposure to hazards such as unenclosed and unprotected heights, and must avoid all exposure to vibration. [Plaintiff] can perform simple, routine tasks and follow short, simple instructions, and can do work that needs little or no judgment and could perform simple duties that can be learned on the job in a short period. [Plaintiff] has average ability to perform sustained work activities (*i.e.* can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (*i.e.* eight hours a day, for five days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. [Plaintiff] needs [a work] environment with minimal supervisor contact (Minimal contact does not preclude all contact, rather it means contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges and it does not preclude being in proximity to the supervisor.[]) He can work in proximity to co-workers but not in a cooperative or team effort. [Plaintiff] needs a work environment that requires minimal interactions with co-workers. He needs a work environment that is predictable and with few work setting changes. He requires a work environment without public contact.

Tr. 16. The ALJ concluded that Plaintiff was not able to perform his past relevant work. Tr. 20.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of document preparer and escort vehicle

driver.  Tr. 21.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from November 17, 2011, through the date of the ALJ's decision.  Tr. 22.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) discounting Dr. Mary Pellicer's clinical findings and diagnoses regarding Plaintiff's wrist and shoulder impairments and failing to properly develop the record regarding those impairments; (2) failing to properly consider the opinion of examining clinical psychologist Dr. Roland Dougherty; (3) failing to provide specific, clear, and convincing reasons for discrediting Plaintiff's testimony regarding the severity and limiting effects of his impairments; and, (4) not accounting for the full extent of Plaintiff's functional limitations in the ALJ's RFC assessment.

**DISCUSSION**

**A.   Credibility**

Plaintiff contests the ALJ's adverse credibility determination.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ found Plaintiff not fully credible concerning the intensity, persistence, and limiting effects of his symptoms.  Tr. 17.  The ALJ reasoned that Plaintiff was less than credible because his symptom reporting was contrary to (1)

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

his daily activities, (2) the fact that he worked during the relevant period (especially his work at the gun club), (3) the results of psychological testing, and (4) evidence that suggested that Plaintiff did not have serious behavioral problems or problems getting along with others.

## 1.    Daily Activities

The ALJ noted Plaintiff was able to drive, go to the grocery store, do his own laundry, read, play online computer games, and watch movies. Tr. 17. The ALJ also noted Plaintiff had three friends, lived with his fiancé, had worked at one location with two or three other people, and had good reading and concentration skills. Tr. 17 (citing Tr. 320, 380). The ALJ noted that some of Plaintiff's activities involved significant use of his hands such as picking up spent ammunition at the gun club, working on an irrigation system, throwing hay bales, and driving. Tr. 17 (citing Tr. 378, 413).

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his or her other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

The ALJ did not err in using inconsistencies between Plaintiff's activities and Plaintiff's testimony to discredit Plaintiff. The ALJ properly found Plaintiff's testimony regarding his social difficulties undermined by the fact that Plaintiff lives with his fiancé, has a few friends that he occasionally spends time with, and has worked with a small team of co-workers. *See* Tr. 36, 43, 45. The ALJ also

properly found inconsistencies between Plaintiff's allegations of poor grip undermined by the fact that he was able to pick up spent ammunition, throw hay bales, and drive. *See* Tr. 378, 413. Furthermore, Plaintiff's ability to play computer games, watch movies, and read for long periods belies his testimony that he has difficulty concentrating. Tr. 54. The inconsistencies between Plaintiff's testimony and his activities identified by the ALJ are clear and convincing reasons to discredit Plaintiff.

## 2.     Work During Relevant Period

The ALJ noted Plaintiff reported working as a fruit picker (seasonally) and part time at a gun club doing maintenance work. Tr. 17. The ALJ noted that Plaintiff's work at the gun club was especially inconsistent with Plaintiff's symptom reporting. Tr. 17. The ALJ noted that, at the gun club, Plaintiff used his hands to pick up ammunition, threw hay bales, responded appropriately to a situation where a child pointed a gun at him on two occasions, and was otherwise capable of some social interaction. Tr. 17-18 (citing Tr. 413 (Plaintiff injured when "throwing up a bale of hay")); *see also* Tr. 44 (Plaintiff describing his reaction to the gun incident).

Generally, a claimant's ability to work can be considered in assessing credibility. *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). The fact that a claimant "tried to work for a short period of time and, because of his impairments, *failed*," should not be used to discredit the claimant. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007). In fact, evidence that a claimant tried to work and failed may support the claimant's allegations of disabling pain. *Id.* at 1038.

The ALJ did not err in using Plaintiff's work during his alleged period of disability to discredit him. Plaintiff's work as a seasonal fruit picker suggests Plaintiff is capable of working with his hands. Plaintiff's work at the gun club suggests he is capable of a range of work tasks and some limited social contact.

Plaintiff's work did not appear to end because of his impairments.  His work as a fruit picker was seasonal and his work at the gun club ended due to a workplace injury.  *See* Tr. 38, 404-20.  Plaintiff's ability to work during his alleged period of disability is a clear and convincing reason to discredit Plaintiff.

### 3.    Inconsistent with Results of Psychological Testing

The ALJ noted that Plaintiff's IQ score was in the average range.  Tr. 18 (citing Tr. 339).  The ALJ further noted Plaintiff "was able to recall three of three objects after five minutes, could recount a recent news item, was able to complete a serial threes test easily and accurately, and was able to carry out a three-step command with ease."  Tr. 18 (citing Tr. 335-36, 379-80).

An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony.  *Bray*, 554 F.3d at 1227.

The ALJ did not err in finding Plaintiff's testimony inconsistent with the results of psychological testing.  Plaintiff testified he has problems focusing and is generally "scatter brained."  Tr. 54.  The ALJ reasonably found these allegations inconsistent with Plaintiff's IQ score and the mental status examinations performed by Dr. Dougherty.  *See* Tr. 335-36, 339, 379-80.  These inconsistencies are clear and convincing reasons to discredit Plaintiff.

### 4.    Records of Plaintiff's Ability to Get Along with Others

The ALJ cited a 1997 school assessment that indicated Plaintiff did not have serious behavioral disabilities.  Tr. 18 (citing Tr. 344).  The ALJ also noted Plaintiff was pleasant and cooperative with his treating and evaluating providers.  Tr. 18 (citing Tr. 338, 379, 381, 420).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid."  *Smolen*, 80 F.3d at 1284.

The ALJ may have erred in using Plaintiff's school records and demeanor at this medical appointments to discredit him, but any error is harmless. Simply because Plaintiff appeared agreeable at his medical appointments does not mean he does not have social or behavioral problems. Regarding Plaintiff's school records, the Court agrees with Plaintiff that Plaintiff's records document some significant behavioral issues. *See* ECF No. 15 at 23 n.8 (citing Tr. 234, 314, 322). The ALJ's citation to a single report stating Plaintiff's problems were not considered "serious behavior disabilities," Tr. 344, seems to be contrary to the majority of the evidence indicating Plaintiff has some behavioral and social problems. *See* ECF No. 15 (citing Tr. 44-48, 55-56, 279-81, 292, 300, 364, 372, 374, 378). Any error is harmless, however, because the ALJ provided other valid reasons to discredit Plaintiff and adequately accounted for Plaintiff's social limitations in the ALJ's RFC assessment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1160, 1163 (9th Cir. 2008) (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid).

## 5. Conclusion

The ALJ provided specific, clear, and convincing reasons to find Plaintiff less than fully credible and this finding is supported by substantial evidence. In light of these valid reasons, any error contained in the ALJ's adverse credibility finding is harmless.

## B. Evaluation of Medical Evidence

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by examining sources Mary Pellicer, M.D., and Roland Dougherty, Ph.D. ECF No. 15 at 7-17.

///

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

To the extent that Drs. Pellicer and Dougherty assessed Plaintiff with limitations that would prevent him from working, these opinions are contradicted by the opinions of State agency consultant physicians Edward Beaty, Ph.D., John Robinson, Ph.D., Gordon Hale, M.D., Gerald Peterson, Ph.D., and Charles Wolfe, M.D. Tr. 73-81, 84-96, 98-110. Therefore, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions of Drs. Pellicer and Dougherty.

### 1.    Mary Pellicer, M.D.

Dr. Pellicer completed a physical evaluation of Plaintiff in February 2012. Tr. 363-68. Upon physical examination, Dr. Pellicer found Plaintiff had mostly normal range of motion, but decreased range of motion in his left knee. Tr. 366-

67. Dr. Pellicer noted Plaintiff had problems with coordination and that he couldn't open a jar or pick up coins from a flat surface. Tr. 367. Dr. Pellicer rated Plaintiff's strength on the right side as "5/5" and "4+/5" on the left side. Tr. 367-68. Dr. Pellicer's clinical impressions of Plaintiff included wrist derangement, possible carpal tunnel syndrome; left shoulder derangement; and, chronic left knee pain secondary to left knee derangement, possible meniscal tear. Tr. 368. For each of these clinical impressions, Dr. Pellicer recommended further evaluation. Tr. 368. Dr. Pellicer concluded Plaintiff had the following limitations:

- He is able to stand and walk for at least 6 hours in an 8 hour day with more frequent breaks due to chronic left knee pain.
- Sitting: no restrictions
- No assistive devices needed.
- [Plaintiff] would be capable of lifting and carrying 10 [pounds] occasionally due to chronic left knee pain and left shoulder derangement.
- [Plaintiff] can bend but can't squat, crawl, kneel or climb due to chronic left knee pain.
- [Plaintiff] can only manipulate occasionally due to bilateral wrist problems.
- He is able to see, hear, speak and drive independently and do all the necessary daily self-care activities.

Tr. 368.

The ALJ gave "little to no weight" to Dr. Pellicer's opinions. Tr. 19. The ALJ found Dr. Pellicer's evaluation internally inconsistent, pointing to inconsistency between Dr. Pellicer's conclusion that Plaintiff has "bilateral wrist problems," Tr. 368, with her findings that Plaintiff had normal strength in his right wrist and only a slight decrease of strength in his left wrist, Tr. 367. Tr. 19. The ALJ also found Dr. Pellicer's opinions inconsistent with Plaintiff's activities of picking fruit and picking up spent ammunition. Tr. 19. Finally, the ALJ noted Plaintiff had a normal range of motion and x-rays revealed no abnormalities. Tr. 19.

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

The ALJ did not err in giving little weight to Dr. Pellicer's opinions.  The ALJ properly noted the inconsistency between Dr. Pellicer's mostly normal examination findings with her opinion that Plaintiff had "bilateral wrist problems." Tr. 368.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that an ALJ may cite internal inconsistencies in evaluating a physician's report); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ may reject a medical opinion that is "inadequately supported by clinical findings").  The ALJ also properly cited to Plaintiff's activities, which, contrary to Dr. Pellicer's opinion, suggest his hand problems are not as severe as found by Dr. Pellicer.  *See Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (ALJ properly relied on the fact that claimant could perform certain activities to discount a physician's opinion that the claimant's impairments prevented him from working). Finally, the ALJ properly reasoned that Plaintiff's complaints were not supported by objective evidence, including x-rays and Dr. Pellicer's range of motion testing. *See Batson*, 359 F.3d at 1196 (inconsistency with objective evidence is a specific and legitimate reason for rejecting physician's opinions).

Plaintiff argues Dr. Pellicer's opinions are not internally inconsistent, noting that Dr. Pellicer observed that Plaintiff exhibited Phalen's signs (indicating carpal tunnel syndrome) and was unable to open a jar or pick up coins.  ECF No. 15 at 9-10 (citing Tr. 366-67).  Plaintiff makes a reasonable argument, but this does not explain the inconsistency identified by the ALJ, i.e., Dr. Pellicer's conclusion that Plaintiff had "bilateral wrist problems," Tr. 368, and Dr. Pellicer's finding Plaintiff had "[n]ormal wrist range of motion" and mostly normal strength in his wrist flexors and extensors, Tr. 367.  The ALJ reasonably gave more weight to Dr. Pellicer's examination findings than to Dr. Pellicer's "bilateral wrist problems" conclusion, Tr. 368.

Plaintiff further argues that his periodic activity of picking up spent ammunition and prior work harvesting fruit (which lasted for two months) was not

contrary to Dr. Pellicer's opinions.  ECF No. 15 at 10-11 (citing SSR 96-8p).  Plaintiff is correct in arguing SSR 96-8p requires the ALJ's RFC assessment to include the claimant's "*maximum* remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis."  But SSR 96-8p does not prohibit the ALJ from using inconsistencies between a physician's opinion and the claimant's activities as a reason to discount the physician's opinion.  In this case, the ALJ reasonably inferred that Plaintiff's work at the gun club and picking fruit involved more use of his hands than found by Dr. Pellicer, and this was a specific and legitimate reason to discount Dr. Pellicer's opinions.

Additionally, Plaintiff argues that x-rays were not useful in detecting his shoulder impairment and that the ALJ should have accepted Dr. Pellicer's findings based on her clinical interview with Plaintiff.  ECF No. 15 at 11-12.  Whether x-rays are capable of revealing Plaintiff's shoulder impairment is outside of the Court's expertise.  As argued by Defendant, however, the negative x-ray is supported by the fact that Dr. Pellicer's physical examination of Plaintiff revealed Plaintiff had full range of motion and near-full strength in his shoulders.  ECF No. 18 at 6-7 (citing Tr. 19); *see also* Tr. 366-67.

Finally, Plaintiff argues the ALJ erred by not supplementing the record based on Dr. Pellicer's recommendation for further evaluation of Plaintiff's wrist and shoulder impairments.  ECF No. 15 at 13.  "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Smolen*, 80 F.3d at 1288.  Despite the ALJ's duty to develop the record, it remains the claimant's burden to prove he or she is disabled.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).  "An ALJ's duty to develop the record . . . is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("The ALJ's duty to supplement a claimant's record

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate[,] or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous.").

In this case, Dr. Pellicer's opinions were not ambiguous.  Dr. Pellicer assessed Plaintiff with specific functional limitations after conducting a clinical interview, physical examination, and reviewing Plaintiff's x-rays.  Although Dr. Pellicer might have needed more information to reach definitive diagnoses, the fact that she was able to assess Plaintiff with specific functional limitations demonstrates she had a sufficient basis to opine on the subject most relevant to determining Plaintiff's RFC.  The ALJ did not give weight to some of Dr. Pellicer's opinions, but this does not mean the opinions were ambiguous.  As discussed *supra*, the ALJ provided specific and legitimate reasons for discounting certain opinions of Dr. Pellicer.  Ultimately, it is Plaintiff's burden to show that he is disabled, and, in this case, he failed to meet that burden.  The ALJ did not err by not further developing the record.

### 2.    Roland Dougherty, Ph.D.

Dr. Dougherty completed a psychological evaluation of Plaintiff in May 2011.  Tr. 329-38.  Dr. Dougherty diagnosed Plaintiff with ADHD; PTSD, in partial remission; anxiety disorder, NOS, possibly with psychotic features; rule out specific learning disorders; alcohol dependence, in substantial remission; and cannabis dependence, in partial remission.  Tr. 337.  Dr. Dougherty opined that Plaintiff likely did not have a severe cognitive impairment and attributed Plaintiff's problems in school to his ADHD symptoms.  Tr. 337.  Dr. Dougherty opined that Plaintiff's prognosis was "fair," and he might benefit from counseling and psychotropic medication.  Tr. 338.  Dr. Dougherty concluded:

> [Plaintiff] was pleasant and cooperative . . . His social skills appear to be at least fair.  His thinking was rational and goal directed.  He reports being able to do some tasks well, especially if he can work

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

alone.  He reads extensively.  He should be able to understand, remember, and follow at least simple directions.  He reports being able to work at light tasks for extended periods.

Tr. 338.

Dr. Dougherty completed a second psychological evaluation of Plaintiff in March 2012.  Tr. 372-82.  Dr. Dougherty's diagnoses were nearly identical to the diagnoses made in his May 2011 evaluation.  Tr. 381.  Dr. Dougherty noted Plaintiff reported he was "less depressed" and his condition had "improved . . . slightly" since Dr. Dougherty's previous evaluation.  Tr. 381.  Dr. Dougherty opined that Plaintiff's prognosis was guarded, but might "improve appreciably with appropriate mental health counseling and medication resources."  Tr. 381.  Dr. Dougherty concluded:

> [Plaintiff] was pleasant, polite and cooperative . . . His social skills are at least fair.  His thinking was logical and goal directed.  He reports having been able to work at intermittent labor jobs during the past year, though he has to work through pain.  He would like to work if he can.  He has difficulty being around and tolerating others.  He said he works best alone.

Tr. 381-82.

The ALJ gave "some weight" to Dr. Dougherty's opinions.  Tr. 20.  The ALJ found Dr. Dougherty relied upon Plaintiff's subjective statements, which were not entirely credible.  Tr. 20.  The ALJ also noted that Dr. Dougherty's opinions were "too vague and general to be vocationally relevant."  Tr. 20.  In particular, the ALJ noted Dr. Dougherty stated that Plaintiff's social skills "appear to be at least fair" but Dr. Dougherty did not describe Plaintiff's ability to interact with supervisors, coworkers, or the public.  Tr. 20 (citing Tr. 338, 381).  The ALJ gave weight to Dr. Dougherty's opinion that Plaintiff can understand, remember, and follow at least simple directions.  Tr. 20 (citing Tr. 338).

The ALJ provided specific and legitimate reasons for giving little weight to Dr. Dougherty's opinions.  As discussed *supra*, the ALJ did not err in finding

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

Plaintiff less than fully credible, and the ALJ may discount a medical opinion that is based "to a large extent" on a claimant's non-credible self-reports and not on clinical evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Dougherty's substantial reliance on Plaintiff's self-reporting is obvious as most of the "limitations" contained in Dr. Dougherty's medical source statements are statements made by Plaintiff. *See* Tr. 338, 381-82. *Cf.* 20 C.F.R. §§ 404.1513, 416.913 (medical source statement should articulate "what [claimants] can still do despite [their] impairment(s)"). The Court also agrees with the ALJ that Dr. Dougherty's opinion that Plaintiff's "social skills are at least fair," Tr. 338, 381, is vague. The Court further finds, as argued by Defendant, that the ALJ's RFC determination, which limits Plaintiff to "minimal" interaction with coworkers, supervisors, and the public, Tr. 16, adequately accounts for Dr. Dougherty's assessment of Plaintiff's "at least fair" social skills. *See* ECF No. 18 at 8-9 (comparing Dr. Dougherty's opinions to ALJ's RFC assessment).

Plaintiff argues the ALJ erred by discounting Dr. Dougherty's opinions on the grounds that Dr. Dougherty relied on Plaintiff's subjective statements. Plaintiff argues the ALJ did not indicate that Dr. Dougherty's opinions were "more heavily based" upon Plaintiff's self-reports than on Dr. Dougherty's clinical observations. ECF No. 15 at 15 (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)). The Court disagrees that *Ghanim* requires the ALJ to make specific findings that balance the extent a medical provider relied upon the claimant's reporting and the extent the medical provider relied on his or her professional expertise. *Ghanim* rearticulated the general rule, "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (citing *Tommasetti*, 533 F.3d at 1041). In *Ghanim*, the Ninth Circuit found that substantial evidence did not support the ALJ's finding that his treating provider's opinion was largely based on the

claimant's unreliable self-reporting. *Id.* In this case, substantial evidence does support such a conclusion as Dr. Dougherty's medical source statement essentially regurgitates Plaintiff's (unreliable) reporting. *See* Tr. 338, 381-82.

Plaintiff argues the ALJ erred by reasoning that Dr. Dougherty failed to state specific limitations regarding Plaintiff's ability to interact with supervisors, coworkers, or the public. ECF No. 15 at 16. Plaintiff argues Dr. Dougherty was not required to state his opinions in "vocationally relevant" terms. ECF No. 15 at 16. As discussed *supra*, Dr. Dougherty's opinion concerning Plaintiff's social limitations is vague. The Court is inclined to agree with Plaintiff that medical sources need not provide "vocationally relevant" opinions. But to aid the ALJ in determining whether claimants can work in spite of their (mental) impairments, the medical opinions must provide some specific insight into the claimants' cognitive and social functionality. Simply stating that a claimant's social skills are "fair" provides little information that the ALJ can use to determine the claimant's RFC.

Plaintiff finally argues Dr. Dougherty's opinion that Plaintiff can understand, remember, and follow simple instructions does not support that Plaintiff can perform substantial gainful employment given Dr. Dougherty's further assessment of social limitations. ECF No. 15 at 17. The Court disagrees with Plaintiff that the ALJ somehow erred in adopting part of Dr. Dougherty's opinions, but rejecting other parts. The Court finds the ALJ provided specific and legitimate reasons for giving little weight to Dr. Dougherty's opinions and mostly accounted for Dr. Dougherty's opinions in formulating Plaintiff's RFC.

## C.    Residual Functional Capacity

Plaintiff argues the ALJ's RFC assessment failed to account for manipulation and social limitations. ECF No. 15 at 24-26.

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the

ORDER GRANTING DEFENDANT'S MOTION . . . - 18

individual retains the capacity for sustained performance of the physical-mental requirements of jobs").  In formulating a RFC, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities.  *See*, *e.g.*, *Bray*, 554 F.3d at 1226.

In this case, the ALJ found Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] can lift up to twenty pounds occasionally and lift and/or carry up to ten pounds frequently, stand and/or walk about two hours in an eight-hour day with normal breaks, and sit for about six hours in an eight-hour day with normal breaks.  [Plaintiff] cannot perform prolonged walking or standing, and cannot use foot controls.  He can occasionally balance, stoop, and crouch, and cannot climb ramps, stairs, ladders, ropes, or scaffolds.  He can frequently finger, and reach bilaterally, must avoid concentrated exposure to hazards such as unenclosed and unprotected heights, and must avoid all exposure to vibration.  [Plaintiff] can perform simple, routine tasks and follow short, simple instructions, and can do work that needs little or no judgment and could perform simple duties that can be learned on the job in a short period.  [Plaintiff] has average ability to perform sustained work activities (*i.e.* can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (*i.e.* eight hours a day, for five days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence.  [Plaintiff] needs [a work] environment with minimal supervisor contact (Minimal contact does not preclude all contact, rather it means contact does not occur regularly.  Minimal contact also does not preclude simple and superficial exchanges and it does not preclude being in proximity to the supervisor.[)]  He can work in proximity to co-workers but not in a cooperative or team effort.  [Plaintiff] needs a work environment that requires minimal interactions with co-workers.  He needs a work environment that is predictable and with few work setting changes. He requires a work environment without public contact.

Tr. 16.

*///*

ORDER GRANTING DEFENDANT'S MOTION . . . - 19

Plaintiff argues that, based on Dr. Pellicer's opinion, the ALJ should have found that Plaintiff can only manipulate occasionally. ECF No. 15 at 25. Plaintiff also argues the ALJ should have found that he was unable to work with even minimal contact with coworkers and supervisors. ECF No. 15 at 26. Plaintiff argues this limitation is supported by the opinion of State agency psychological consultant, John Robinson, Ph.D., that Plaintiff required "supportive supervision." *Id.* (citing Tr. 94).

As discussed *supra*, the Court finds the ALJ provided legitimate reasons for discounting the manipulation limitations assessed by Dr. Pellicer. Most notably, Dr. Pellicer's conclusion that Plaintiff has "bilateral wrist problems," Tr. 368, was inconsistent with Dr. Pellicer's clinical findings. Plaintiff's argument that he requires "supportive supervision," is not supported by the record. State agency consultants opined that supportive supervision would be "helpful," but they stopped short of finding this to be a mandatory condition of employment. Tr. 94; *see also* Tr. 108 (Dr. Peterson reaching the same conclusion as Dr. Robinson). An ALJ need not adopt a medical opinion offered as a recommendation rather than an imperative. *Carmickle*, 533 F.3d at 1165. Furthermore, the same consultants opined that Plaintiff would "work best away from others," Tr. 94, 108, and the ALJ accounted for this limitation in his RFC assessment, *see* Tr. 16. The Court concludes the ALJ's RFC assessment is supported by substantial evidence and not based on legal error.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

///

ORDER GRANTING DEFENDANT'S MOTION . . . - 20

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED October 30, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 21